## Case No. 6,591.

### HOLBROOK v. FAUQUIER & A. TURNPIKE CO. et al.

[3 Cranch, C. C. 425.] [1]

Circuit Court, District of Columbia. April Term, 1829.

CORPORATIONS—POWER OF EXECUTIVE OFFICER TO ISSUE STOCK — PURCHASER WITHOUT NOTICE — PROTECTION TO LEGAL TITLE AGAINST AN EQUITY.

1. The president of the Fauquier and Alexandria Turnpike Company, without the directors, had no power to issue certificates of stock.

2. No certificate could be lawfully issued to a non-subscriber.

3. The company is not bound by the acts of its agents, unless acting within the scope of their authority; and a special agency must be strictly pursued.

4. The president had only a special authority, and having exceeded it, by issuing certificates of stock without the authority of the directors, and without consideration, his act did not bind the company.

5. The plaintiff, not having a legal title, is not protected by the rule applicable to a purchaser without notice, which is a protection only to a legal title against an equity; not to an equity against an equity; especially when the plaintiff, by ordinary diligence, might have avoided the imposition.

Bill in equity to compel the defendants [the Fauquier & Alexandria Turnpike Company and others] to admit the plaintiff as a stockholder, and to permit certain shares of stock to be transferred to him on the books of the company. The cause was set for hearing on the bill, answer, replication, depositions, and exhibits. The bill stated, in substance, that the company being indebted to C. J. Love, did, to satisfy the claim, by John Love, their president, agree to let him

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

have stock at par to the amount of his claim; that the president and directors issued, in due form of law, two certificates for ten shares each, to the said C. J. Love, duly signed by their president, and countersigned by their treasurer, as required by their charter. That another certificate was issued in favor of John Love for six shares, which he transferred to the said C. J. Love also in payment of the debt due to him by the company, but only three of them had been paid up. That the said C. J. Love, being indebted to R. B. Lee in a larger sum, directed them to be transferred to E. J. Lee, in trust for R. B. Lee. That the president certified on the back of the certificates, that the shares were so transferred. That R. B. Lee, being indebted to the plaintiff, ordered the certificates to be delivered to him, in payment, which was done. But the company refuses to suffer them to be transferred on their books; alleging that no such shares appear by their books to have been issued, and no consideration paid for them. But the plaintiff avers that they were duly and fairly issued; and that he is a purchaser for valuable consideration without notice, &c. The answer of the company denies all the material allegations of the bill; but admits the handwriting of the president and treasurer to the certificates, which were in the usual form, and to the indorsements.

Mr. Hodgson, for plaintiff, cited Paley, Ag. 229, 230, 325, 326; Hern v. Nichols, 1 Salk. 289; 1 Com. Dig. 240; Baring v. Corrie, 2 Barn. & Ald. 137; Hooe v. Oxley, 1 Wash. [Va.] 19.

Mr. Taylor, for defendants.

Before CRANCH, Chief Judge, and MORSELL, Circuit Judge.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The whole evidence in this cause is contained in the answer, the depositions of E. J. Lee, and H. Peake, and in the certificates of stock exhibited. From the evidence the facts appear to be, that the certificates of stock in question, were signed by the president and countersigned by the treasurer, in the form required by the sixth section of the charter, and were delivered to the said C. J. Love, by the president, without consideration; and from the circumstance that the books of the company contain no evidence of the issue of such certificates, it may be inferred that they were issued without the order of the directors. That the shares never were transferred by C. J. Love, upon the books of the company. That neither the said C. J. Love nor John Love ever subscribed for the said shares, or any of them, and never paid any consideration therefor. That the said certificates were received by Mr. E. J. Lee, as agent for Mr. R. B. Lee, from the said C. J. Love for a full and valuable consideration, and with a belief that they had been issued for a full

and valuable consideration paid by him to the company; that the shares had been duly transferred to the said E. J. Lee, in trust for the said R. B. Lee, and that the plaintiff received the certificate with the same belief, and for a full and valuable consideration paid by him to the said R. B. Lee. By the 6th section of the charter of the company it is enacted, "that the president and directors shall cause a written or printed certificate to be given to each subscriber for every share by him subscribed, signed by the president and directors, and countersigned by the treasurer; which certificates shall be transferable by an assignment made thereof, on the books of the company, by the owner in person, or by an attorney in fact." The president of the company, without the directors, has no power by the charter, to do any act, except to sign the certificate, and to render to the courts of Fauquier, Prince William, and Fairfax, an account of the cost of the road, and of the expenses of repairs, &c. He does not appear to have had authority to make any contract for stock, nor to issue certificates of stock, nor to certify transfers; much less could he issue a valid certificate of stock not subscribed for, and without consideration. These certificates are therefore void.

But the plaintiff has been induced to part with his money by a false certificate of the president of the company. Is not the company bound to make it good? In general, the principal is not bound by the act of his agent, unless it be within the scope of his authority; and if it be a special agency, the authority must be strictly pursued. Here the president certainly had not more power to issue certificates of stock than the president and directors had; yet, by the 6th section of the charter, they could only cause certificates of stock to be issued to subscribers. The president, therefore, was not acting within the scope of his authority, in issuing a certificate to a non-subscriber. The authority of the president to sign certificates, was a special authority to sign certificates to subscribers, by order of the president and directors. In signing a certificate to a person who was not a subscriber, and without the authority of the directors, the president did not pursue his special authority strictly. Upon both grounds, therefore, namely, that he was not acting within the scope of his authority, and that he did not strictly pursue his special authority, the company is not responsible for his act.

Besides, the plaintiff cannot complain of a deception which he might have avoided by ordinary diligence. The president had no authority to certify a transfer, if it had been made upon the books; much less, one not so made. But he did not certify that the transfer was made upon the books; and the plaintiff was bound to know that such only could be a legal transfer. If the certificate of the president was equivocal, it was negligence

in the plaintiff not to insist on a satisfactory explanation before he took the paper. There having been no legal transfer of the stock, the plaintiff cannot avail himself of the principle that he is a purchaser for valuable consideration without notice; for that is a plea only in defence of a legal title against a prior equity; not a substantial ground of relief for a plaintiff in equity against an equity. Whatever legal or equitable defence the company would have had against C. J. Love or J. Love, in regard to these certificates, they have against the plaintiff. The equity follows the certificates into the hands of every one who cannot, at law, avail himself of them.

I am, therefore, of opinion that the bill should be dismissed, with costs. If the bill be dismissed as against the company, it cannot be continued against C. J. Love, and John Love, because, being non-residents, the court has no jurisdiction as to them. Bill dismissed with costs.